IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CHRISTINA A. DELP,**

    **Plaintiff,**

vs.

    Civil Action 2:09-cv-460
    Judge Edmund A. Sargus, Jr.
    Magistrate Judge E. A. Preston Deavers

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## OPINION AND ORDER

Plaintiff, Christina A. Delp, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits. This matter is before the Court for consideration of Plaintiff's July 9, 2010 Objections (Doc. 18) to the United States Magistrate Judge's June 28, 2010 Report and Recommendation (Doc. 17), recommending that the Court affirm the decision of the Commissioner denying benefits. For the reasons stated below, the Court **OVERRULES** Plaintiff's Objections and **ADOPTS** the Magistrate Judge's Report and Recommendation. Accordingly, the Commissioner's decision is **AFFIRMED**.

I.

Plaintiff alleges that she became disabled at the age of 26 from depression and trouble

with her knees, back, and neck.[1] On July 28, 2004, Plaintiff filed her application for disability benefits. Plaintiff has past work experience as a waitress and food service worker.

In September 2004, Plaintiff saw Dr. Tilley, a clinical psychologist. Dr. Tilley measured Plaintiff's verbal IQ at 94, her performance IQ at 93, and her full scale IQ at 92. In June 2008, Plaintiff saw Dr. Donaldson, a clinical psychologist, for a consultive psychological evaluation. Dr. Donaldson measured Plaintiff's verbal IQ at 71, her performance IQ at 66, and her full scale IQ at 66. In addition, Dr. Donaldson diagnosed Plaintiff with Major Depressive Disorder and Generalized Anxiety Disorder. Although Dr. Donaldson measured Plaintiff's full scale IQ at 66, he concluded that her "ability to understand, remember and carry out one- or two-step instructions does not appear to be impaired." (R. at 241.) He further opined that Plaintiff's "interpersonal relationship skills as well as her ability to relate to supervisors and co-workers, appear to be limited moderately." (*Id.*) Dr. Donaldson also indicated that Plaintiff's "ability to withstand the stress and pressures associated with day-to-day work activity may be limited moderately due to her . . . diagnoses and medical status." (*Id.*)

The administrative law judge ("ALJ") determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. He further found that Plaintiff could not perform her past work, but retained the residual functional capacity ("RFC") to perform "simple, unskilled work involving one or two

---

[1] On appeal, Plaintiff's arguments relate only to mental impairments. (*See* Pl.'s Stmt. of Errs. 2–3) (noting the severe physical impairments and stating that the ALJ's physical residual functional capacity ("RFC") "is not disputed in this appeal, nor is it discussed further.") Consequently, the Court's opinion, like Plaintiff's Statement of Errors, the Commissioner's Memorandum in Opposition, and the Magistrate Judge's Report and Recommendation, considers only evidence and determinations relating to Plaintiff's mental impairments.

-2-

step simple instructions, that can be performed in a relatively low stress work environment that requires no more than occasional or intermittent interaction with supervisors, coworkers, and the public." (R. at 21.) Based upon his finding that jobs exist in significant number that Plaintiff could perform, the ALJ concluded that she was not disabled under the Social Security Act.

In her Statement of Errors, Plaintiff asserted that the ALJ did not adequately consider the results of the IQ testing by Drs. Tilley and Donaldson. Plaintiff maintained that the ALJ should have considered Listing 12.02A7 due to Plaintiff's noted IQ loss. Plaintiff maintained that the ALJ's failure to consider Listing 12.02A7 and to find that she met or equaled the Listing constituted reversible error.

The Magistrate Judge, in her Report and Recommendation, explained why the ALJ did not err in failing to consider Listing 12.02 as follows:

> Plaintiff's reference to "Listing 12.02A7," and her apparent conclusion that she meets this listing by virtue of her measurable IQ loss, demonstrate Plaintiff's misconstruction of the Listing of Impairments . . . . Listing 12 addresses nine specific mental disorders. Every mental disorder addressed in the Listing includes *two* components, a diagnostic component, which consists of a description of the mental disorder; and a severity component, which consists of specific criteria measuring the severity of the identified mental disorder. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(A)–(C). The regulations contain no "Listing 12.02A7." The undersigned assumes that Plaintiff intended to reference Listing 12.02, pertaining to organic brain damage:
>
>> 12.02 Organic Mental Disorders: Psychological or behavioral abnormalities associated with a dysfunction of the brain. History and physical examination or laboratory tests demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities.
>
> 20 C.F.R. pt. 404, subpt. P, app. 1, 12.02. Thus, Listing 12.02's diagnostic component describes an abnormal mental state or loss of functionality related to an organic factor that has been documented through physical examinations or laboratory tests. Plaintiff's counsel, in Plaintiff's Statement of Errors, infers that

-3-

the head injury Plaintiff suffered in a automobile accident on March 19, 2008, resulted in her diminished IQ. (*See* Pl.'s Stmt. of Errs. 2.) Although Plaintiff's diminished IQ has been documented through examinations and testing, the requisite relationship between the diminished IQ and the alleged organic factor, the automobile accident, has not. This explains why the ALJ did not consider Listing 12.02.

(Report and Rec. 10–11) (footnote omitted). The Magistrate Judge further indicated that even if Plaintiff met the diagnostic component of Listing 12.02, she could not establish that she met the severity component.

In her Objections, Plaintiff does not challenge the Magistrate Judge's analysis or conclusions with respect to Listing 12.02. Indeed, Plaintiff concedes that "the evidence may not establish [Plaintiff] met the severity components in Listing 12.02 B . . . ." (Pl.'s Objections 2.) Instead, Plaintiff complains that neither the Commissioner nor the Magistrate Judge reconciled how Plaintiff could work in an environment with only occasional or intermittent interaction with supervisors when the Commissioner has determined that an individual with Plaintiff's low IQ scores requires increased supervision.

## II.

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The Court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*,

486 F.3d 234, 241 (6th Cir. 2007)); *see also*, 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). Put another way, a decision supported by substantial evidence is not subject to reversal, even if the reviewing court might arrive at a different conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). "Substantial evidence exists when 'a reasonable mind could accept the evidence as adequate to support a conclusion [and] . . . presupposes that there is a zone of choice withing which the decision-makers can go either way, without interference by the courts.' " *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal; citation omitted). Even if supported by substantial evidence, however, " 'a decision of the Commissioner will not be upheld where the [Commissioner] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.' " *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

### III.

The issue before the Court is whether, in light of Plaintiff's IQ scores, the ALJ erred in concluding that Plaintiff could perform jobs that require no more than occasional interaction with supervisors.

Plaintiff contends that the ALJ's determination that she can only work in an environment with diminished supervision cannot be reconciled with the Commissioner's determination that individuals with such low IQ scores require increased supervision. In essence, Plaintiff is claiming that her RFC should have limited her to work performed under close supervision. Plaintiff directs the Court to Social Security Ruling 85-16, which "provides guides for the

determination of RFC for individuals whose mental impairement(s) does not meet or equal the listing, but is more than not severe." SSR 85-16. Plaintiff references a portion of the following paragraph:

> The evaluation of intellectual functioning by a program physician, psychologist, ALJ, or AC member provides information necessary to determine the individual's ability to understand, to remember instructions, and to carry out instructions. Thus, an individual, in whom the only finding in intellectual testing is an IQ between 60 and 69, is ordinarily expected to be able to understand simple oral instructions and to be able to carry out these instruction under somewhat closer supervision than required of an individual with a higher IQ. Similarly, an individual who has an IQ between 70 and 79 should ordinarily be able to carry out these instructions under somewhat less close supervision.

*Id.*

This language does not require the RFC limitation Plaintiff seeks for at least two reasons. First, it references an individual "in whom the *only finding* in intellectual testing is an IQ between 60 and 69." *Id.* (emphasis added). Plaintiff has had her IQ measured twice, once with a full scale IQ measurement of 92 and the other with a full scale IQ measurement of 66. Second, Ruling 85-16 does not state that an individual with such a low IQ score always requires "somewhat closer supervision." *Id.* Rather, the Ruling indicates that the individual "is ordinarily expected" to perform these tasks under somewhat closer supervision. *Id.* It explicitly provides that an intellectual functioning evaluation, performed by "a program physician, psychologist, ALJ, or AC member," will "provide the information necessary to determine the individual's ability . . . ." *Id.* Here, the ALJ and Dr. Donaldson evaluated Plaintiff's intellectual functioning. Ruling 85-16 notes that the determination of mental RFC involves the consideration of evidence such as: "[h]istory, findings, and observations from medical sources . . . [r]eports of the individual's activities of daily living and work activity . . . [and] [r]eports from workshops, group

-6-

homes, or similar assistive entities. *Id.* Consistent with this Ruling, the ALJ thoroughly considered Plaintiff's activities of daily living and the findings and observations from medical sources. (*See* R. at 19–20.) As the Magistrate Judge pointed out,

> [T]he ALJ noted that Plaintiff "reported being able to cook, clean dishes, grocery shop, and do light housework to include vacuuming." [(R. at 19.)] The ALJ also noted that Plaintiff was able to drive and independently dress and bathe herself, as well as do laundry and daily cleaning activities. (*Id.*) . . . Plaintiff engaged in these activities of daily living *after* her decrease in IQ."

(Report and Recommendation 14.) The ALJ also considered Dr. Donaldson's evaluation, which was rendered after the decrease in IQ. The ALJ noted that:

> With regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties. On examination [Plaintiff] was found to be alert and attentive. She did not manifest signs of confusion or lack of awareness. She correctly recited six digits forward and four digits backwards. . . . Dr. Donaldson concluded that despite her low IQ scores, she was borderline intellectual functioning. I note that her working memory was 79 and *Dr. Donaldson found no limitations on her ability to perform 1 and 2 step instruction tasks.*

(R. at 20) (emphasis added). The ALJ then explicitly determined that Plaintiff's "low IQ scores were not consistent with her adaptive functioning level." (R. at 19–20.) The Court concludes that substantial evidence supports the ALJ's determination. Thus, despite Plaintiff's low IQ scores, the ALJ did not err in concluding that Plaintiff could perform the types of tasks identified in her RFC with only intermittent interaction with supervisors.

Accordingly, Plaintiff's objection to the Report and Recommendation is not well-taken and is **OVERRULED**.

## IV.

The Court, having reviewed the record *de novo*, determines that there is substantial evidence supporting the ALJ's determination that Plaintiff is not disabled, as defined in the

-7-

Social Security Act. Accordingly, the Court **OVERRULES** Plaintiff's Objections (Doc. 18) and **ADOPTS** the Magistrate Judge's Report and Recommendation (Doc. 17). The Commissioner's decision is **AFFIRMED,** and this action is **DISMISSED.**

The Clerk shall enter final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

9-16-2010
DATE

EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**